# SUPREME JUDICIAL COURT

### AT THE

## NOVEMBER SESSION 1862, AT BOSTON.

PRESENT :

Hon. GEORGE T. BIGELOW, Chief Justice.
Hon. CHARLES A. DEWEY,
Hon. PLINY MERRICK,
Hon. EBENEZER R. HOAR,      } Justices.
Hon. REUBEN A. CHAPMAN,

## Israel Lombard & others *vs.* William H. E. Boyden & others.

Under a will devising and bequeathing the residue of the testator's estate, to be held in trust for his four sons, with provisions showing that their enjoyment of the same is to be several and not joint, the share of one of them who died before the testator does not go to the survivors, but must be disposed of as undevised estate.

Under a devise of real and personal estate in trust, with directions to divide and pay over the rents, dividends, income and profits thereof to the testator's sons, until they severally shall reach a certain age, and then to convey to each his share of the principal, or, in case of his death before reaching that age, to convey the same to his heirs at law, and with other expressions showing that the testator intended no distinction between the disposition of the real and personal estate, the words " heirs at law" will be construed according to their common law interpretation, and will not include those who would be entitled to a share of personal property under the statute of distributions.

BILL IN EQUITY by the administrators with the will annexed, and trustees appointed by the will, of Dwight Boyden, praying

for instructions in relation to the execution of their respective trusts. The two surviving sons of the said Dwight Boyden, and the widow and infant son, the latter of whom appeared by his guardian *ad litem*, and the administrator of the estate of Dwight Boyden, a son of the testator, were the defendants. The case was reserved by *Hoar*, J. for the determination of the whole court, upon facts stated in the bill and answers, which sufficiently appear in the opinion.

*C. A. Welch*, for the plaintiffs, submitted the case without argument.

*S. Bartlett*, for the infant son of Dwight Boyden, Jr.

*E. Ames*, ( *T. Tolman* with him,) for the widow and the administrator of the estate of Dwight Boyden, Jr., cited, as to the disposition of the share of Frederick Boyden, *Edwards* v. *Saloway*, 2 Phillips' Ch. 624; *Green* v. *Pigot*, 1 Bro. C. C. 103; *Crickett* v. *Dolby*, 3 Ves. Jr. 13; and, as to the disposition of the share of Dwight Boyden, Jr., *Holloway* v. *Holloway*, 5 Ves. 399, 403; *Vaux* v. *Henderson*, 1 Jac. & Walk. 388, *n.*; *Gittings* v. *M'Dermott*, 2 Myl. & K. 69; *Evans* v. *Salt*, 6 Beav. 266; *Stamp* v. *Cooke*, 1 Cox Ch. C. 236; *Rowland* v. *Gorsuch*, 2 Cox Ch. C. 187; *Lowndes* v. *Stone*, 4 Ves. 649; *Mounsey* v. *Blamire*, 1 Russ. 387; *Garrick* v. *Camden*, 14 Ves. 372; *Mac Leroth* v. *Bacon*, 5 Ves. 159.

MERRICK, J.  It is a general rule that if a legatee dies before the testator, the legacy shall lapse, and sink into the residuum of the testator's estate. Toller, 303. Bac. Ab. Legacies, E. And in such case, if there be a residuary legatee, and he is nominated generally, he is entitled to whatever may fall into the residue, in consequence of the death of the particular legatee. The reason of this latter rule is, that the residuary clause is understood to be intended to embrace everything not otherwise effectually given, because the testator is supposed to take the particular legacy away from the residuary legatee only for the sake of the particular legatee; so that, upon the failure of the particular intent, effect shall be given in the construction of the will to the general intent. 2 Williams on Executors, (4th Amer. ed.) 1250.

But if, upon a proper construction of the provisions of the will, the presumption in favor of such general intent is negatived, this rule does not apply, and the lapsed legacy is to be considered and treated as undisposed of estate. So it is in the case of a residuary bequest to several persons as tenants in common; the share of one of them dying in the testator's lifetime does not pass, because, the testator having given to each of them a certain proportion of his property, according to their number, it would not be consistent with such declared intention to give to the survivor a larger proportion. And the rule is general, that where a money legacy or a residue is given to more persons than one, by any mode of expression which denotes a severance, the legatees will be tenants in common. And if the gifts be to them as tenants in common, the share of one who dies in the life of the testator will not go to the survivors, but will pass to the next of kin, under the statute of distributions. 2 Williams on Executors, (4th Amer. ed.) 1252. *Easum* v. *Appleford*, 5 Myl. & Cr. 56. *Bagwell* v. *Dry*, 1 P. Wms. 700. *Barber* v. *Barber*, 3 Myl. & Cr. 688. In *Craighead* v. *Given*, 10 S. & R. 351, where it appeared that the testator ordered his real and personal estate to be sold, and gave, out of its proceeds, particular legacies to each of his seven children and grandchildren, and then directed that the residue should be divided among these legatees proportionally, and one of them died in his lifetime, it was held that the share of the deceased legatee was lapsed, and did not go to the six survivors; that they were all tenants in common, and the lapsed share must be distributed under the intestate act, as undisposed of by the will.

The provisions in the will and the facts disclosed in the case last cited are very similar to those which appear in the present case; and the decision there made illustrates very clearly the rule, in conformity to which the rights of the parties in this case are to be determined. Dwight Boyden, the testator, first bequeathed certain specified things to his four sons, to be equally divided among them. Concerning all the things to which this bequest refers, a full and satisfactory settlement has been made by the parties, and no question respecting it is now presented

to the court. He next gives and devises all the residue and remainder of his estate, real and personal, of which he may die seised and possessed, to E. D. Sohier and C. A. Welch, to hold in trust for the uses and purposes in his will afterwards declared; and he confers upon them full power and authority to sell and dispose of all of his real estate. He then directs his trustees

" To invest the same in such manner as they shall deem most safe and expedient, and,

" *First.* To set apart therefrom the sum of one hundred thousand dollars, or property in their judgment of that value, and to hold, manage and control the same, and to divide and pay over the rents, dividends, income and profits thereof from time to time, as the same accrue, to and among my said four sons equally, during their natural lives, and upon the decease of each of said four sons, to convey, transfer and pay over one fourth of the principal of said sum or property so set apart, to and among such person or persons, for such estates and interests, in such parts and portions, and to be vested at such times and in such manner, and subject to such restrictions, reservations and conditions, as such deceased son, if of the age of twenty-one years or upwards at the time of his decease, shall by any last will, duly executed, have limited, directed and appointed the same, and in default of any such will, to his heirs at law.

" *Second.* To set apart the further sum of fifty thousand dollars, or property in their judgment of that value, and to hold, manage and control the same, and to convey, transfer and pay over one fourth part thereof to each of my said sons, when he attains the age of twenty-one years; but if any of my said sons should die before attaining said age, then upon his decease to convey and pay over the one fourth part, which would otherwise come to him, to his heirs at law, and until such son's attaining twenty-one years, or his earlier decease, to pay the rents, dividends, income and profits of his said one fourth part, from time to time, as the same accrue, to such son.

" *Third.* To hold, manage and control all the residue of said property given in trust to them as aforesaid, and to convey,

transfer and pay over one fourth part thereof to each of my said sons when he attains the age of twenty-five years; but if any of said sons shall decease before attaining the age of twenty-five years, then upon his said decease, to convey, transfer and pay over the said one fourth part, which would otherwise come to him, to and among such person or persons, for such estates and interests, in such parts and portions, and to be vested at such times and in such manner, and subject to such restrictions, reservations and conditions, as such deceased son, if of the age of twenty-one years or upwards, shall by any last will, duly executed, have limited, directed and appointed the same, and in default of such will, to his heirs at law ; and until said son's attaining twenty-five years, or his earlier decease, to pay the rents, profits, dividends and income of his said one fourth part, from time to time, as the same accrue, to said son."

Frederick Boyden, who was one of the four sons of the testator living at the time of the making of the will, died in the lifetime of the testator ; and therefore all the legacies to him lapsed. The particular legacies to him, being the one fourth part of the several sums of one hundred thousand dollars, and of fifty thousand dollars, which the trustees were directed to set apart for the four legatees, having lapsed by his death, fell into and became a part of the residuum. This residuum was bequeathed to all the four legatees as tenants in common, in certain designated proportions ; namely, one fourth part to each of them, payable to them as they should severally arrive at the age of twenty-five years, and in the mean time the interest and income of their several shares and proportion thereof to be paid to them, as the same should from time to time accrue. The proportion thereof to which each of the legatees who survived the testator became entitled is therefore not to be enlarged by the lapse of the legacies to Frederick. But his share and proportion of the whole estate having lapsed, and the proportion of each of the other legatees being limited and restricted to one fourth part of the residuum, the one fourth part given to him does not go to the survivors, but the real estate descends to the heirs at law of the testator, and the personal to his next

of kin, according to the statute of distributions. 2 Williams on Executors, *ubi supra.* The trustees, therefore, instead of the sums of one hundred thousand and of fifty thousand dollars, are authorized and empowered to set apart the sums of seventy-five thousand and thirty-seven thousand five hundred dollars, for the surviving legatees, to be held and disposed of according to the provisions and directions of the will; and these surviving legatees will each take one third of one fourth of the real estate, or of the proceeds thereof if the power of sale given to the trustees shall have been executed by them, as heirs at law of the testator. And the one fourth part of the personal estate bequeathed to Frederick is to be held and disposed of as undevised estate, for the benefit of his next of kin under the statute of distributions.

The next question arises in relation to the disposition of the share and proportion of the estate given and devised to Dwight. Boyden, one of the four sons and legatees of the testator. He died after the testator, and after having attained to the age of twenty-one, and before arriving at the age of twenty-five years. He was therefore entitled to the immediate payment of the sum of twelve thousand five hundred dollars, being the one third part of the sum of thirty-seven thousand five hundred dollars payable to the legatees as they severally arrived at the age of twenty-one years. This is very plain, and it is conceded by all the parties. But the further and material question is, whether the share and proportion of seventy-five thousand dollars to be set apart for the surviving legatees, and of the residuum of the estate, given and bequeathed to him, passed upon his death to his heirs at law or to his next of kin.

It is a general and settled rule, that, upon the devise of real estate to a particular person, and to his heirs at law, which is to vest the estate at a future time, upon the occurrence of some designated contingency, the words " heirs at law " have their common law signification, and are not to be construed as meaning next of kin. And the same rule prevails where there is a devise and bequest of the whole real and personal estate embraced in one common provision, or where, there being different provisions, the same expressions are used in reference to each kind of

estate; and more particularly where, in administering the estate under the will, the real estate may be blended with and made a part of the share or proportion of the personal estate given to a particular legatee. *Gwynne* v. *Muddock*, 14 Ves. 488. *Clarke* v. *Cordis*, 4 Allen, 466. This is necessary in order to give full effect to the intention of the testator. Now in addition to the provision in the will of the testator in the present case, that the trustees may sell and dispose of his whole real estate, and may thereupon make the proceeds received from its sale a part of the several funds, so by them to be set apart for the several legatees, there are other significant expressions in it, which clearly evince that it was his intention that the words "heirs at law," as used by him, should have only their common law import. Thus, in directing that the trustees should set apart the sum of one hundred thousand dollars, he further orders and directs that they shall divide and pay over "the rents, dividends, income and profits thereof" from time to time, as the same shall accrue, and upon the decease of each of his four sons shall "convey, transfer and pay over" the share and proportion to which they are severally entitled to such person or persons as he shall appoint by will, or, "in default of any such will, to his heirs at law." Thus it appears that the whole of his real estate might be set apart by his trustees, at their discretion, as a portion of the fund of one hundred thousand dollars, instead of selling and disposing of the same and making the proceeds of the sale a part of that fund. For they are to divide and pay over to the legatees during their respective lives "the rents" as well as other income of the fund — a term which is peculiarly and fitly applicable to income to be derived only from real estate. And as they severally decease their shares and proportions of this fund are to be "conveyed" to their heirs at law. Precisely the same expressions are used in relation to the fund of fifty thousand dollars to be set apart by the trustees, and also in the residuary clause, as to all the residue of the property, consisting of both real and personal estate, given to them in trust. Therefore it is manifest that the same ultimate disposition is to be made of both species of property; and as real estate would necessarily

pass under the provisions of the will to those who by the common law are the heirs at law of the testator, the personal property must also have the same destination, and cannot be taken by the next of kin, under the statute of distributions. And therefore, upon the death of Dwight Boyden, the son of the testator, his proportion of the real and personal estate devised and bequeathed to him, and which was to be conveyed or paid either to him upon his arrival at the age of twenty-one years, or to his heirs at law, or the appointees under his will, was not distributable among his next of kin, but is to be taken by his heirs at law directly under the will. His widow therefore takes nothing under it, and has no interest in any part of the real or personal estate devised to him except in the twelve thousand five hundred dollars which became at once payable to him on the death of the testator. But she has an interest in the one third of one quarter of the personal estate, which was bequeathed to Frederick, and which became lapsed upon his death in the lifetime of his father.

The whole real and personal estate of the testator being devised to his trustees, and all the legacies to Frederick having lapsed by his death in the lifetime of the testator, they will discharge and fulfil the duties of their trust, in reference to the share and proportion of the estate which was given and bequeathed to him, by transferring and paying over the shares of the personal estate, and of the proceeds of the real estate, which in the exercise of the power of sale given to them in the will they have converted into money, to the heirs at law and next of kin, to which they are respectively entitled as undevised estate.